UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARTIN DESMOND<br><br>        Plaintiff,<br><br>   v.<br><br>ALBERTO R. GONZALES,<br>     U.S. ATTORNEY GENERAL,<br>     U.S. DEPARTMENT OF JUSTICE<br><br>        Defendant. | Civil Action No. 03–1729 (CKK) |

**MEMORANDUM OPINION**
(November 15, 2006)

Plaintiff's claim that Defendant unlawfully retaliated against Plaintiff in contravention of the Rehabilitation Act is the only remaining claim in the instant case. The Court granted Defendant's Summary Judgment Motion with respect to Plaintiff's disability discrimination claim pursuant to the Rehabilitation Act via its [70] Order and accompanying [71] Memorandum Opinion of January 17, 2006. A Pretrial Conference is scheduled for November 16, 2006, at 10:00 a.m.

On August 2, 2006, Defendant filed [80] Defendant's Motion in Limine Concerning Plaintiff's Dismissed Disability Claims. In Defendant's Motion, Defendant moves to exclude testimony and evidence concerning the merits of Plaintiff's disability discrimination claim (including details related to the cause, nature of, and treatment for Defendant's alleged Post Traumatic Stress Disorder (PTSD)) pursuant to Federal Rules of Evidence 401, 402, 403, 701, 801, and 802. Def.'s Mem. Limine at 1-2. Defendant argues that events which occurred prior to Plaintiff's filing of his claim, including the FBI's decision not to let Plaintiff graduate with his

class and the manner in which the suitability investigation regarding Plaintiff was performed,[1] are not directly relevant to Plaintiff's retaliation claim and would thus confuse, mislead, and/or produce undue sympathy for Plaintiff by the jury. *Id.* at 8-10. "[D]efendant seeks to preclude plaintiff from trying to present testimony and other evidence that challenges the legitimate basis for [the] FBI's actions taken before he filed his EEO claim." *Id.* at 5.

On August 9, 2006, Plaintiff filed an [84] Opposition to Defendant's [80] Motion in Limine. Plaintiff argues that "[e]vidence of plaintiff's PTSD relates to the underlying charge of discrimination, which forms the basis of his retaliation claim; is necessary to show, as he must, that his opposition to discrimination was in good faith; is necessary to show pretext; is necessary to present a complete and accurate picture to the jury of the facts in the case; and will ensure that the jury fully understands the facts of the case and does not jump to inaccurate conclusions regarding plaintiff's claim of disability discrimination." Pl.'s Opp'n at 6. Plaintiff claims that "information related to Mr. Desmond's PTSD is critical evidence to the overall story of retaliation," and that "the underlying facts regarding the PTSD, the impression it had on Mr. Higginbotham, and how it affected subsequent events of retaliation are inextricably intertwined and therefore must all be presented to the jury for a complete and accurate picture of events in

---

[1] Defendant claims that "on September 28, 2000, FBI Assistant Director Jeffrey Higginbotham, who was responsible for the FBI Academy's Training Division, sent a recommendation to the Administrative Services Division at FBI Headquarters recommending that plaintiff be removed from the New Agents' Training Program, and the position of Special Agent, and returned to his previous support position with the FBI." Def.'s Mem. Limine at 3-4. Thus, according to Defendant, Mr. Higginbotham's report was sent to FBI Headquarters prior to Mr. Higginbotham's learning of Plaintiff's EEO Claim. Plaintiff, on the other hand, claims that Mr. Higginbotham told Plaintiff during their meeting on October 4, 2000, that Mr. Higginbotham had not yet forwarded his recommendation to FBI Headquarters. Pl.'s Opp'n at 2. As this discrepancy is relevant to Plaintiff's retaliation claim, the Court shall not categorically exclude evidence with respect thereto prior to trial.

this case." *Id.* at 10-11. Plaintiff admits that "Mr. Higginbotham testified at his deposition that the information he had received about Mr. Desmond was positive, but not enough to overcome the reasons given to him by his subordinate employees, which were reflected in the Cochran Report." *Id.* at 3. As such, Plaintiff argues that in order to counter Mr. Higginbotham's anticipated testimony that he relied on the Cochran Report in making his decision not to reverse his own recommendation to FBI Headquarters, "[t]o demonstrate pretext, as he must, plaintiff must be allowed to show that the stated reasons for Mr. Higginbotham's actions are false and unworthy of credence. *See Reeves*, 530 U.S. at 147-48." *Id.* at 16. "The only way for plaintiff to do so here is to demonstrate the Mr. Higginbotham knew or was made aware that certain FBI officials at the Academy did not act fairly and the report on which he claims to rely was one-sided, incomplete, inaccurate, and largely misrepresented the circumstances surrounding Mr. Desmond's suitability as a Special Agent." *Id.*

On August 17, 2006, Defendant filed its [87] Reply. Defendant emphasizes that the Cochran Report and its contents cannot demonstrate pretext for Defendant's alleged retaliation against Plaintiff because said report was created prior to Plaintiff's EEO-related activities. Def.'s Reply at 3. Defendant clarifies that "defendant does not object to the introduction of relevant evidence given to Mr. Higginbotham. What defendant objects to is any attempt to challenge decisions made and the basis for actions taken prior to plaintiff's filing his claim of discrimination. Plaintiff should not be able to launch an independent attack on the contents of the Cochran Report by introducing evidence never given to Mr. Higginbotham, because such evidence could not possibly demonstrate that Mr. Higginbotham's reliance on the Cochran Report was a pretext for retaliation." *Id*. at 14.

Based on the information and arguments made in Defendant's [80] Motion in Limine and the corresponding filings, the Court will not at this juncture make a definitive ruling on Defendant's Motion in Limine. Instead, the Court shall HOLD IN ABEYANCE Defendant's [80] Motion in Limine for further discussion and clarification of the Parties' positions at the Pretrial Conference to be held on November 16, 2006. However, the Court shall set forth the legal framework herein under which it will consider the instant Motion in Limine and more generally the Parties' proffered exhibits and evidentiary objections.

**Legal Framework**

To state a claim for retaliation under the Rehabilitation Act, Plaintiff must show that: (1) he engaged in a statutorily protected activity; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action. *See Baker v. Potter*, 294 F. Supp. 2d 33, 40 (D.D.C. 2003); *Duncan*, 214 F.R.D. at 50 (D.D.C. 2003). Plaintiff may prove to the jury that Defendant retaliated against him either by providing circumstantial evidence subject to the *McDonnell Douglas* burden-shifting framework, or by providing direct evidence of retaliatory animus. *McGill v. Muñoz*, 203 F.3d 843, 845 (D.C. Cir. 2000); *Dorchy*, 45 F. Supp.2d at 9; *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."). Direct evidence reflects discriminatory animus on its face. *Dang v. Inn at Foggy Bottom*, 85 F. Supp. 2d 39, 42 (D.D.C. 2000). The McDonnell Douglas balancing framework does not apply in the instant case because Plaintiff has presented direct evidence of Defendant's retaliation against Plaintiff via Plaintiff's claims that "at a meeting on October 23, 2000, Mr. Higginbotham

explicitly 'informed [Plaintiff] that he would have let [Plaintiff] graduate if [Plaintiff] had not filed an EEO complaint.'  Pl.'s Exh. 1 ¶ 121 (Desmond Dec.); *see also* Pl.'s Stmt. ¶ 72."  [70] Mem. Op. at 50.

Pursuant to Federal Rule of Evidence 402, "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority.  Evidence which is not relevant is not admissible."  Fed. R. Evid. 402.  The Federal Rules of Evidence set forth a broad definition of relevance that even encompasses evidence with only slight probative value.  Under the rules, evidence is relevant if it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. of Evid. 401; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) ("The Rule's basic standard of relevance . . . is a liberal one."); *United States v. Carter*, 522 F.2d 666, 685 ("The basic relevancy test is whether proffered evidence has a tendency to make the existence of a fact more or less probable than would be the case without the benefit of the evidence."); *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985) ("[T]he 'standard of relevance established by the Federal Rules of Evidence is not high.'") (*quoting Carter v. Hewitt*, 617 F.2d 961, 966 (3d Cir. 1980)).

However, one of the limiting rules referenced in Federal Rule of Evidence 402 is Federal Rule of Evidence 403:  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of

cumulative evidence." Fed. R. Evid. 403.  Rather than viewing an item of evidence under Rule 403 "as an island," the Supreme Court has held that Rule 403's admissibility analysis "invit[es] further comparisons [that] take account of the full evidentiary context of the case as the court understands it when the ruling must be made." *Old Chief v. United States*, 519 U.S. 172, 182, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997).  With regard to the dangers of "unfair prejudice" delineated by Rule 403, the Advisory Committee Notes thereto indicate that this refers to "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note.  The Supreme Court has recognized that this includes "concededly relevant evidence" that can lure a fact finder into rendering a decision "on a ground different from proof" specific to the elements of a given case. *Old Chief*, 519 U.S. at 180, 117 S. Ct. 644 (acknowledging this consideration with respect to criminal verdicts).

As the Court presently understands the Parties' positions, neither Party objects to use of the Cochran Report (September 18, 2000); Mr. Higginbotham's Report (September 28, 2000); evidence of the conversation between Plaintiff and Mr. Higginbotham on October 4, 2000; evidence of any conversation or correspondence between Mr. Higginbotham and any individual regarding Plaintiff between October 4, 2000, and October 23, 2000 (inclusive); and evidence of the conversation between Plaintiff and Mr. Higginbotham on October 23, 2000.  The dispute at the heart of Defendant's Motion in Limine is thus over testimony and evidence concerning the merits of Plaintiff's disability discrimination claim.  Def.'s Mem. Limine at 1-2.  Plaintiff has also made clear his intention to introduce evidence with respect to the incident in his mother's home that allegedly triggered his PTSD.

As this case presently stands before the Court, the Court would grant Defendant's Motion in Limine, as evidence related to Plaintiff's alleged PTSD (and particularly the alleged cause thereof) and the merits of Plaintiff's disability claim are not probative with respect to Plaintiff's retaliation claim.  Plaintiff's alleged disability is in fact irrelevant to Plaintiff's retaliation claim beyond providing a basis for his filing a claim in the first place, and neither Party disputes that Plaintiff engaged in a legally-protected activity when he talked with EEO Counselor DeShazor on October 11, 2000, or filed his disability claim for a "mental" impairment on October 17, 2000. Only to the extent that Plaintiff's PTSD was discussed by Plaintiff with Mr. Higginbotham, or was discussed in the conversations between Mr. Higginbotham and others between October 4, 2000, and October 23, 2000 or included in materials (besides the Cochran Report) which were reviewed by Mr. Higginbotham between October 4, 2000, and October 23, 2000, will such information be admissible.  While Plaintiff claims that information regarding the potential cause of Plaintiff's alleged PTSD (which the Court in its Memorandum Opinion dated January 17, 2006, found did not rise to the level of a disability as defined pursuant to the Rehabilitation Act) should be relayed to the jury so that the jury does not perceive Plaintiff as being "weak," *see* Pl.'s Opp'n at 11, such information is dramatic, highly distracting, and not relevant to Plaintiff's retaliation claim if this incident was never relayed to Mr. Higginbotham directly.  More generally, it appears that Plaintiff's strategy is to introduce evidence under the rubric of "pretext" to discount the findings of the Cochran Report itself.  While evidence that supports or undermines the creation and contents of the Cochran Report was relevant and was already considered by the Court with respect to Plaintiff's disability discrimination claim, it is–by virtue of the Cochran Report's creation prior to Plaintiff's discussion with an EEO counselor–not viable

"pretext" evidence in the context of Plaintiff's retaliation claim. At present, the jury must decide whether or not the FBI retaliated against Plaintiff–not whether the FBI should have found that Plaintiff was suitable to become a Special Agent. The Court is cognizant that in this Circuit, a court "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.' " *Fischbach v. District of Columbia Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C. Cir. 1982). In this case, the jury may not second-guess the FBI's employment decisions with respect to Plaintiff absent finding a demonstrably *retaliatory* motive. Furthermore, introduction of such evidence would create a danger that the jury, even if a proper limiting instruction were given, would re-consider the merits of Plaintiff's dismissed discrimination claim in its consideration of his pending retaliation claim.

However, the Court's final resolution of this dispute, in light of the balancing the Court must undertake pursuant to Rule 403 between any probative value of the evidence Plaintiff wishes to introduce and the immense delay, confusion, waste of time, and/or unfair prejudice that may result from the introduction of such evidence, depends in part on facts about which the Court is presently unclear based on the Parties' filings. It is unclear to the Court whether Mr. Higginbotham's interactions with various FBI personnel after his conversation with Plaintiff on October 4, 2000, were intended to acquire supplemental information regarding Mr. Desmond, or were intended to somehow test the accuracy of the conclusions made in the Cochran report. If the latter is in fact the case, the Court would view any testimony by Mr. Higginbotham regarding the accuracy of the Cochran report or his intentions to test the accuracy thereof as opening the door to Plaintiff with respect to the accuracy of the Cochran Report itself (which would likely

include some information with respect to the merits of Plaintiff's disability claim). However, if Mr. Higginbotham, who as the Court understands it did not directly evaluate or personally interact to any significant degree with Plaintiff prior to the October 4, 2000 meeting and therefore relied on the conclusions contained in the Cochran report in formulating his own report, simply accepted the conclusions contained in the Cochran report to be true and acquired additional information after his meeting with Plaintiff on October 4, 2000, the Court would not find evidence with respect to the merits of Plaintiff's already-dismissed disability claim to be probative with respect to his retaliation claim. Even if such evidence were minimally probative with respect to the uncontested fact that Plaintiff filed a legally-protected discrimination claim, the only evidence the Court would permit to be introduced to this effect would be Plaintiff's actual charge itself, as additional information with respect to the underpinnings of his disability claim would be unfairly prejudicial to Defendant, who has already been granted summary judgment on the disability discrimination claim itself, and a waste of time and cause of undue delay during trial. The Court expects that Defendant will clarify the scope of Mr. Higginbotham's testimony to this effect at the Pretrial Conference.

The Court also expects that the Parties will assess how the instant Memorandum Opinion applies to the Joint Pretrial Statement submitted to the Court in advance of the Pretrial Conference scheduled for November 16, 2006, such that the Parties will revisit 1) which exhibits they actually intend to use in light of the instant ruling (as opposed to listing all possible exhibits in an abundance of caution should the need for their use arise); and 2) any objections that still remain. The Court notes that it will address any remaining challenges by Defendant pursuant to Federal Rules of Evidence 701, 801, and 802 during the Pretrial Conference. For now, the Court

shall HOLD IN ABEYANCE Defendant's [80] Motion in Limine for further discussion and clarification of the Parties' positions at the Pretrial Conference to be held on November 16, 2006.

Date:   November 15, 2006

                                                   /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge