UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARTIN DESMOND

       Plaintiff,

v.

ALBERTO R. GONZALES,
   U.S. ATTORNEY GENERAL,
   U.S. DEPARTMENT OF JUSTICE

       Defendant.

Civil Action No. 03–1729 (CKK)

**REDACTED MEMORANDUM OPINION**
(February 19, 2007)

On February 14, 2007, Plaintiff filed [112] Plaintiff's Bench Memorandum Regarding the Admissibility of Evidence Relating to the FBI's Investigation of John Louden for Misuse of Government Travel Vouchers and the Subsequent Disciplinary Action Taken Against Him. On February 16, 2007, Defendant filed its Opposition. Also on February 16, 2007, Plaintiff filed his Reply. Upon considering the aforementioned filings and relevant statutes and case law and based on the record presented, the Court shall preclude Plaintiff from cross-examining Mr. John Louden or otherwise introducing evidence with respect to the incident and aftermath thereof discussed in Plaintiff's Bench Memorandum at the trial in the instant case, scheduled to commence on February 20, 2007.

## I. BACKGROUND

Plaintiff's memorandum argues that pursuant to Federal Rules of Evidence 402, 403, 404(b), and 608(b), Plaintiff should be able to cross-examine John Louden, former Section Chief of the FBI's Training Division, with respect to "[1] the Federal Bureau of Investigation's

investigation of Mr. Louden's role in facilitating a scheme to misuse government travel vouchers, [2] the disciplinary action taken against him, and [3] the finding of the U.S. Department of Justice's Inspector General that Mr. Louden was ultimately the beneficiary of 'unduly lenient' treatment for his role in the scheme." Pl.'s Bench Mem. at 1. Plaintiff seeks to cross-examine Mr. Louden solely to impeach his credibility.[1] *See id.* at 2, 4, 6, 8, 9, 10, 11.[2]

---

[1] In a footnote, Plaintiff also states: "Significantly, Mr. Louden apparently took the position in the course of these investigations that he was simply carrying out a direction given to him by the then Assistant Director of Training. Plaintiff also seeks an opportunity to cross-examine Mr. Louden as to that defense as it bears on his motive and intent in the Desmond matter." Pl.'s Bench Mem. at 6 n.5. While the Court is not entirely clear what argument Plaintiff is trying to make, and Plaintiff is free to ask Mr. Louden if he was following the direction of another individual in making his recommendation in the Desmond matter if a proper foundation is laid for said question, Plaintiff may not ask Mr. Louden about the investigation at issue in this Opinion or create any connection thereto in the course of his cross-examination for the reasons set forth in this Opinion.

Additionally, to the extent that Plaintiff has indicated an intent to question Mr. Higginbotham and/or Mr. Varnum as to why "they relied on the assessments of an individual who, by that time, had been the subject of three separate investigations . . . and had been disciplined as a result[,]" Pl.'s Bench Mem. at 8, Plaintiff's counsel shall not be permitted to make such an inquiry without prior approval of the Court. While the Court cautions Plaintiff's counsel that it had concerns about this line of questioning absent Defendant's "opening the door" with respect to Mr. Louden's record with the FBI, Plaintiff's counsel is instructed to approach the bench prior to pursuing this line of questioning such that the Court can make a ruling in the appropriate context at that time.

[2] On page 9 of Plaintiff's Bench Memorandum, Plaintiff states that "the court can surely frame a cautionary instruction to the effect that the evidence should be considered only for its bearing on Louden's veracity and possible bias and is not to be considered as proof of bad character." Pl.'s Bench Mem. at 9. Furthermore, on page 10, Plaintiff states "[t]he fact that [Mr. Louden] was the beneficiary of a reduced level of discipline which the DOJ Inspector General found 'unduly lenient' may also be probative of bias in defendant's favor." *Id.* at 10. However, these brief attempts to connect the incidents at issue to "possible bias" by Mr. Louden are nothing more than mentions--Plaintiff does not actually argue anywhere in his Memorandum how or why bias could be attributed to Mr. Louden on this basis. As such, the Court shall consider Plaintiff's request to cross-examine Mr. Louden related to this incident to be related only to Plaintiff's credibility, as neither the Court nor Defendant should be required to make Plaintiff's arguments for him. *See, e.g., United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th

Mr. Louden's role in the instant case is summarized in the Court's January 17, 2006 [71] Memorandum Opinion as follows: "Mr. Trott briefed Section Chief John Louden on Plaintiff's situation that day, and Mr. Louden made a preliminary determination that Plaintiff would not graduate on August 29, 2000, and that a suitability inquiry would be conducted. Pl.'s Exh. 9 at 73–74 (Trott Dep.); Pl.'s Resp. ¶ 33." Pursuant to Plaintiff's Bench Memorandum, Plaintiff "anticipates that defendant will call John O. Louden, Sr. to testify regarding his participation in the decision to not allow Mr. Desmond to graduate. Mr. Louden, the Training Division Section Chief, reported directly to Mr. Higginbotham, then the Assistant Director of the Training Division, and is likely to testify that he collaborated with Mr. Higginbotham in drafting the Electronic Communication ("EC") that memorialized and justified Mr. Higginbotham's determination that Mr. Desmond should not be allowed to graduate." Pl.'s Bench Mem. at 3.

The Court takes note of the following factual basis for the issues presented in this Memorandum: A retirement dinner was held for Larry Potts, the outgoing FBI Deputy Director, on October 9, 1997, in Arlington, VA. Pl.'s Bench Mem. at 4, Ex. 1 at 17 ("OIG Report "). At the request of his supervisor, Joseph Wolfinger, Assistant Director of the FBI's Training Division, Mr. Louden assisted in organizing a conference on "New Agent Curriculum and

---

Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]"); *Cooper v. First Gov't Mortgage & Investors Corp.*, 238 F. Supp. 2d 50, 62 (D.D.C. 2002) ("The Court is not an advocate, and thus may not fill in the argument where the plaintiffs' motion fails to do so."). Even assuming *arguendo* that the Court were to construe Plaintiff to argue that cross-examination should be allowed to elicit possible bias on behalf of Mr. Louden, such argument would fail. Whether a witness has a motive to color his testimony and therefore offer biased testimony is determined at the time the witness testifies; at trial. As Mr. Louden retired from the FBI in 2001 and both the incident and discipline at issue occurred well before the circumstances surrounding Mr. Desmond's claims in the instant case factually transpired, the Court cannot concoct any basis on which to find that Mr. Louden would have any incentive to provide biased testimony at present.

Training" to take place on October 10, 1997 in Quantico, Virginia, and sent an electronic communication to all SACs advising them of this conference on October 2, 2007. *Id*; Def.'s Opp'n at 1. While approximately 140 FBI employees attended Mr. Potts' retirement dinner, only five SACs (including Mr. Louden) attended the conference, which lasted between 45 and 90 minutes. Pl.'s Bench Mem. at 4-5; OIG Report at 17-18. However, a number of SACs (not including Mr. Louden) used Agency vouchers to cover their travel costs, and such vouchers generally cannot be used solely to attend a retirement party. *Id*. During an interview before the joint investigation committee assigned to investigate this incident (comprised of the FBI's and the Department of Justice's Offices of Responsibility), Mr. Louden "admitted" that "there was no perceived need for the conference prior to the Potts function," and that he "did not believe an objective observer would conclude this was a legitimate conference, as opposed to a cover for SAC travel." OIG Report at 18-19. However, when asked the question of whether the purpose of the conference was to increase the number of attendees at the retirement party, a polygraph test indicated that Mr. Louden "indicated no deception" in his response of denial. OIG Report at 18-19; Def.'s Opp'n at 4.

On December 16, 1998, an SES Board suggested that Mr. Louden be issued a letter of censure. OIG Report at 27. However, on December 24, 1998, the SES Board recommended that Mr. Louden be suspended for 15 days for neglect of duty resulting in a perception of impropriety. *Id.* at 28; Pl.'s Board Mem. at 5. Ultimately, Robert Bryant, then Deputy Director of the FBI, determined that a 15-day suspension would be "unnecessarily harsh" and instead issued a letter of censure to Mr. Louden. OIG Report at 29; Pl.'s Board Mem. at 6. [REDACTED] The OIG Report, dated November 15, 2002, attached by Plaintiff and cited in this opinion later stated that

the "Deputy Director's decision to reduce [Mr. Louden's] penalty to a letter of censure [was] highly questionable" and that the "discipline ultimately imposed on Louden was unduly lenient." OIG Report at 30; Pl.'s Board Mem. at 6. However, while the OIG Report took issue with the severity of discipline imposed on Mr. Louden, it did not suggest that Mr. Louden should have been disciplined for dishonest or untrustworthy behavior of some kind. OIG Report at 30.

## II.  LEGAL STANDARDS & DISCUSSION

*A.     Federal Rules of Evidence 402 and 403*

Pursuant to Federal Rule of Evidence 402, "All relevant evidence is admissible. . . . Evidence which is not relevant is not admissible." Under the Federal Rules of Evidence, "relevant" evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

However, courts have discretion to exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Rather than viewing an item of evidence under Rule 403 "as an island," the Supreme Court has held that Rule 403's admissibility analysis "invit[es] further comparisons [that] take account of the full evidentiary context of the case as the court understands it when the ruling must be made." *Old Chief v. United States*, 519 U.S. 172, 182, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). Accordingly, under Rule 403, the court should evaluate "the degrees of probative value and unfair prejudice" for the offered evidence and "any actually available substitutes as well." *Id*. If the alternative evidence fares better in this

calculation, then the value of the offered evidence would have "discounted probative value." *Id.* at 183. Nonetheless, the court should also consider "the offering party's need for evidentiary richness and narrative integrity in presenting a case[.]" *Id.*

In applying Rule 403, courts have viewed evidence as having a limited probative value where that evidence is cumulative of evidence on a similar point. *See, e.g.*, *United States v. Fonseca*, 435 F.3d 369, 375-76 (D.C. Cir. 2006) (affirming the trial court's exclusion of evidence regarding a key witness's credibility where such evidence was prejudicial and unnecessarily cumulative of a point counsel had "ample" opportunity to establish with other evidence); *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) (upholding the limitation of cross-examination of a witness regarding bias where additional cross-examination would have been cumulative of matters already presented to the jury). However, the opposite is true where proffered evidence is unique with regard to a point at issue during trial.

With regard to the dangers of "unfair prejudice" delineated by Rule 403, the Advisory Committee Notes thereto indicate that this refers to "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note. The Supreme Court has recognized that this includes "concededly relevant evidence" that can lure a fact finder into rendering a decision "on a ground different from proof" specific to the elements of a given case. *Old Chief*, 519 U.S. at 180, 117 S. Ct. 644 (acknowledging this consideration with respect to criminal verdicts). The same is true with regard to a witness's credibility—while limits on witness credibility can be exposed, a trial judge must deal with "highly inflammatory" allegations regarding credibility with sensitivity to avoid "unwarranted prejudice." *See United States v. Sampol*, 636 F.2d 621, 667 (D.C. Cir. 1980)

(upholding limited cross examination into a witness' alleged drug use where counsel had proffered little reason justifying this exploration).

The Court holds that any inquiry by Plaintiff regarding "the finding of the U.S. Department of Justice's Inspector General that Mr. Louden was ultimately the beneficiary of 'unduly lenient' treatment for his role in the scheme[,]" Pl.'s Bench Mem. at 1, is *not* relevant to the instant case, as an outside perception of the degree of discipline imposed on Mr. Louden in January of 1999 has no bearing on Mr. Louden's credibility at the time he testifies in this case nor with respect to any aspect of the *case at hand*. The degree to which evidence regarding Mr. Louden's conduct in 1997 as placed at issue in Plaintiff's Bench Memorandum and the investigation and discipline related thereto is relevant to the instant case is only on the issue of Mr. Louden's credibility, as the credibility of Mr. Louden–whom the Court understands will be a testifying witness–is relevant to the case at hand. As such, the Court believes that despite the Parties' consideration of the inclusion or preclusion of Plaintiff's proposed line of cross-examination under Rules 402, 403, 404(b), and 608(b), the most appropriate framework for considering Plaintiff's credibility–in this case, limited to his veracity for truthfulness (see *infra* n.2)–is that of Rule 608(b). *See* Rule 608(b) advisory committee's note.[3]

---

[3] "By limiting the application of the Rule to proof of a witness' character for truthfulness, the amendment leaves the admissibility of extrinsic evidence offered for *other* grounds of impeachment (such as contradiction, prior inconsistent statement, bias and mental capacity) to Rules 402 and 403. *See, e.g., United States v. Winchenbach,* 197 F.3d 548 (1st Cir. 1999) (admissibility of a prior inconsistent statement offered for impeachment is governed by Rules 402 and 403, not Rule 608(b)); *United States v. Tarantino*, 846 F.2d 1384 (D.C. Cir. 1988) (admissibility of extrinsic evidence offered to contradict a witness is governed by Rules 402 and 403); *United States v. Lindemann,* 85 F.3d 1232 (7th Cir. 1996) (admissibility of extrinsic evidence of bias is governed by Rules 402 and 403)." Fed. R. Evid. 608(b) advisory committee's note (emphasis added).

Regardless, in performing the balancing test required by Federal Rule of Evidence 403, the Court finds that the probative value of said evidence–namely, "the Federal Bureau of Investigation's investigation of Mr. Louden's role in facilitating a scheme to misuse government travel vouchers, [and] the disciplinary action taken against him," Pl.'s Bench Mem. at 1, is substantially outweighed by its prejudicial effect.  First of all, as discussed below in Section II(B) of this Opinion, Mr. Louden's actions were determined to constitute a neglect of duty, but not to reflect untruthfulness.  Second, the Court finds that focusing on 1) Mr. Louden's performance in 1997, 2) an investigation into the misuse of government funds (wherein Mr. Louden, who did not use Agency vouchers to attend the conference himself, was never found to have misused said funds), and 3) the context in which this all took place (namely, surrounding the retirement of an FBI official involved in Ruby Ridge) would confuse the jury and result in unfair prejudice to the Defendant in a wholly-unrelated retaliation case, the relevant facts for which transpired in the year 2000.  For these reasons, and incorporating Section II(B) of this Opinion in its entirety, the Court finds that Rule 403 precludes admission of the evidence Plaintiff seeks to introduce and information Plaintiff seeks to elicit from Mr. Louden on cross-examination.

    B.    *Federal Rule of Evidence 608(b)*

Pursuant to Federal Rule of Evidence 608(b), "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . . ." Fed. R. Evid. 608(b).  "Cross-examination pursuant to Fed.

R. Evid. 608(b) is not confined to prior criminal convictions - they are governed by Fed. R. Evid. 609 - but the conduct must be probative of the witness's character for truthfulness.  *See* Fed. R. Evid. 608(b).  It may not, however, be proven by extrinsic evidence." *United States v. Whitmore*, 359 F.3d 609, 618 (D.C. Cir. 2004).  "Controlling current authority–as embodied, most notably, in Federal Rule of Evidence 608(b)–recognizes that evidence of prior acts used to discredit a witness' testimony is often highly prejudicial and therefore should be permitted only when clearly probative of credibility."  *Hemphill v. Washington Metropolitan Area Transit Authority*, 982 F.2d 572, 574 (D.C. Cir. 1993).  Furthermore, pursuant to the Advisory Committee Notes to Rule 608(b),

> It should be noted that the extrinsic evidence prohibition of Rule 608(b) bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act.  For example, Rule 608(b) prohibits counsel from mentioning that a witness was suspended or disciplined for the conduct that is the subject of impeachment, when that conduct is offered only to prove the character of the witness.  *See United States v. Davis,* 183 F.3d 231, 257 n.12 (3d Cir. 1999) (emphasizing that in attacking the defendant's character for truthfulness "the government cannot make reference to Davis's forty-four day suspension or that Internal Affairs found that he lied about" an incident because "[s]uch evidence would not only be hearsay to the extent it contains assertion of fact, it would be inadmissible extrinsic evidence under Rule 608(b)").  *See also* Stephen A. Saltzburg, *Impeaching the Witness: Prior Bad Acts and Extrinsic Evidence*, 7 Crim. Just. 28, 31 (Winter 1993) ("counsel should not be permitted to circumvent the no-extrinsic-evidence provision by tucking a third person's opinion about prior acts into a question asked of the witness who has denied the act").

Fed. R. Evid. 608(b) advisory committee's note.  Pursuant to the reasoning in the advisory committee's note to Federal Rule of Evidence 608(b), the discipline to which Mr. Louden was subject would be barred, leaving at issue his actual participation in organizing the conference in question.  *See Whitmore*, 384 F.3d at 244 ("Rule 608(b) prohibits counsel from mentioning that a witness was suspended or disciplined for the conduct that is the subject of impeachment, when

9

that conduct is offered only to prove the character of the witness."").

Plaintiff quotes *Gordon v. United States* for the principle that "[i]n common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity." Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967). *See* Pl.'s Bench Mem. at 7. However, Mr. Louden was not censured for dishonesty or fraud with respect to his organization of the conference at issue–[REDACTED] The Court shall not independently, nor in reliance on two extrinsic summary documents proffered by Plaintiff (see OIG Report–which applied a different perspective in looking at discipline imposed in a host of FBI activities in retrospect–and Pl.'s Reply, Ex. 1), apply its own characterization of untrustworthiness or dishonesty to Mr. Louden's actions.

In fact, one of the cases cited by Plaintiff, *United States v. Phibbs*, actually undermines its argument that cross-examination of Mr. Louden on the issues raised by Plaintiff should be permitted pursuant to Rule 608(b). In *Phibbs*, "Defense counsel sought to question [an FBI Special Agent] about an internal disciplinary investigation that had been resolved in his favor." *United States v. Phibbs*, 999 F.2d 1053, 1070 (6th Cir. 1993). The district court precluded cross-examination with respect to this investigation. On appeal, the Sixth Circuit held:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility ⋯ may ⋯ in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness[.]
>
> "The first step in a 608(b) analysis is whether the specific conduct is probative of the witness' character for truthfulness or untruthfulness." *United States v. Hill,* 550 F.Supp. 983, 990 (E.D. Pa.1982), *aff'd,* 716 F.2d 893 (3rd Cir.1983), *cert. denied,* 464 U.S. 1039, 104 S. Ct. 699, 79 L. Ed. 2d 165 (1984). Here, [the FBI Special Agent] was

>not disciplined following the investigation into his conduct, so it had little worth as a challenge to his credibility. Whatever probative value might have attached to the FBI's proceedings was substantially outweighed by prejudice to the government. *See* Fed. R. Evid. 403.

*Phibbs*, 999 F.2d at 1070. Plaintiff argues that Mr. Louden's acts should be appropriately distinguished because "[r]ather than being vindicated as was the Special Agent in *Phibbs*, Mr. Louden was found guilty of deceptive conduct which clearly bears on his credibility as a witness." Pl.'s Bench Mem. at 10. However, Plaintiff's analysis falters such that *Phibbs* actually supports the Court's prohibiting Plaintiff's requested inquiry of Mr. Louden. *Phibbs* states that conduct for which an individual "was not disciplined following the investigation into [such] conduct" "ha[s] little worth as a challenge to [] credibility." *Phibbs*, 999 F.2d at 1070. [REDACTED]  Defendant was not censured for dishonesty though this was clearly part of the investigation. By virtue of the analysis applied in *Phibbs* and allegedly adopted by Plaintiff, the FBI's failure to discipline Mr. Louden for dishonest or untrustworthy conduct supports precluding a challenge to his credibility on this basis.

In sum, the Court finds that pursuant to Federal Rule of Evidence 608(b), Plaintiff shall not be permitted to cross-examine, nor produce extrinsic evidence, of either Mr. Louden's scheduling and participation in the conference held on October 10, 1997, nor the investigation into this matter, nor the related discipline imposed on him.

### C.     Federal Rule of Evidence 404(b)

Pursuant to Rule 404(b), "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Fed. R. Evid. 404(b). Mr. Louden's conduct in 1997 is not related to any "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" *in this case*, the events surrounding which transpired in 2000. Since cross-examination of Mr. Louden with respect to "[1] the Federal Bureau of Investigation's investigation of Mr. Louden's role in facilitating a scheme to misuse government travel vouchers, [2] the disciplinary action taken against him, and [3] the finding of the U.S. Department of Justice's Inspector General that Mr. Louden was ultimately the beneficiary of 'unduly lenient' treatment for his role in the scheme[,]" Pl.'s Bench Mem. at 1, is precluded pursuant to Rules 402, 403, and 608(b),[4] the purpose of admitting such evidence would be solely to demonstrate defects in Mr. Louden's character or his propensity to act in a "bad" way and shall not be permitted.

### III. CONCLUSION

Based on the aforementioned reasoning, the Court shall preclude Plaintiff from cross-examining Mr. Louden or otherwise introducing evidence with respect to the incident and

---

[4] *See Hemphill v. Washington Metropolitan Area Transit Authority*, 982 F.2d 572, 575 (D.C. Cir. 1993) ("Specifically, Rule 608(b), as an exception to Rule 404(b), allows a judge to permit inquiry on cross-examination into specific instances of a witness' conduct only "if probative of truthfulness or untruthfulness.").

aftermath thereof discussed in Plaintiff's Bench Memorandum at the trial in the instant case. An Order accompanies this Memorandum Opinion.

Date:   February 19, 2007

                                                                                       /s/
                                         COLLEEN KOLLAR-KOTELLY
                                         United States District Judge